Mikeal TORRES, Individually and as Next Friend of Daylon Torres, Randon Torres, Dustin Torres, Collyn Torres, Zachery Torres, and Koby Torres, Minor Children, and as Representative of the Estate of Cenci Torres, Appellant,

v.

DANNY'S SERVICE CO., LTD. et al, Appellees.

No. 11–07–00104–CV.

Court of Appeals of Texas, Eastland.

July 17, 2008.

Rehearing Overruled Sept. 4, 2008.

Kevin Glasheen, Chad Inderman, Glasheen & Valles, L.L.P., Lubbock, Paul E. Mansur, Denver City, for Appellant.

J. Lawrence Wharton, Christopher B. Slayton, Jeffrey B. Jones, Jones, Flygare, Brown & Wharton, Lubbock, for Appellees.

Panel consists of WRIGHT, C.J., McCALL, J., and STRANGE, J.

## OPINION

RICK STRANGE, Justice.

Mikeal Torres, individually and as next friend of Daylon Torres, Randon Torres, Dustin Torres, Collyn Torres, Zachery Torres, and Koby Torres, minor children, and as representative of the estate of Cenci Torres filed suit against Danny's Service Co., Ltd. d/b/a Danny's Service Co., Inc.; Danny's Service Co. of Denver City, L.L.C.; and Roberto Villegas. Mikeal alleged that Villegas negligently caused a motor vehicle accident that resulted in Cenci's death. The jury found that Cenci and Villegas were both negligent and apportioned 70% of the negligence to Cenci and 30% to Villegas. The trial court accepted the jury's verdict and entered a take-nothing judgment against Mikeal. We reverse and remand.

### I. *Background Facts*

Cenci was driving her Ford Excursion northbound on FM 2055 heading into Denver City, Texas, with her son, Daylon. Villegas was also driving northbound on FM 2055, hauling caliche in a dump truck to build a location for an oil well. Villegas slowed down to turn left onto a lease road. Cenci was in the process of passing Villegas as he initiated his turn. She took evasive action, lost control of her vehicle,

and flipped it. Cenci was injured in the accident and died shortly thereafter.

## II. *Issues on Appeal*

Mikeal raises two issues on appeal. He argues that the trial court erred by allowing Danny's Service Co. to impeach a fact witness with evidence that she suffered from and was taking medication for depression and anxiety and that the trial court also erred by improperly limiting his voir dire.

## III. *Analysis*

### A. *Did the Trial Court Err by Allowing Danny's Service Co. to Impeach a Fact Witness With Her Mental Health History?*

Mikeal called Loretta Ramirez as a fact witness. Ramirez was a passenger in a car traveling behind Cenci's vehicle and described the accident for the jury. On cross-examination and over objection, Ramirez testified that she was on Social Security disability because of depression and panic attacks. Ramirez took medication for her condition and, on the day of the accident, was taking Effexor and Klonopin. She testified that these medications helped level everything out for her. She did not have a regular physician but sought treatment through MHMR. Besides not being able to work, Ramirez's condition had also prevented her from applying for a Texas driver's license.

### 1. *Standard of Review.*

A trial court's decision to admit or exclude evidence is reviewed under an abuse of discretion standard. *Nat'l Liab. & Fire Ins. Co. v. Allen*, 15 S.W.3d 525, 527 (Tex. 2000). To determine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.,*

701 S.W.2d 238, 241–42 (Tex.1985). A trial court does not abuse its discretion as long as some evidence of substantive and probative character exists to support its decision. *Butnaru v. Ford Motor Co.,* 84 S.W.3d 198, 211 (Tex.2002). If, however, the trial court's decision lies outside the zone of reasonable disagreement, an abuse of discretion is shown. *Dixon v. State,* 244 S.W.3d 472, 478 (Tex.App.–Houston [14th Dist.] 2007, pet. ref'd).

### 2. *Mental Health Evidence for Impeachment.*

■ Texas follows a policy of wide-open cross-examination. 2A Steven Goode et al., *Texas Practice: Courtroom Handbook on Texas Evidence* 611 (2007 ed.). Tex.R. Evid. 611(b) provides that "[a] witness may be cross-examined on any matter relevant to any issue in the case, including credibility." Tex.R. Evid. 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Thus, a witness may be cross-examined on any issue that is probative of her credibility. *See Perry v. State,* 236 S.W.3d 859, 866 (Tex.App.–Texarkana 2007, no pet.) (relevant adverse evidence that might affect a witness's credibility should be admitted so that the jury might use it in making the determination of how much weight it should give the testimony). This includes evidence that reflects any impairment or disability affecting the witness's credibility. *See Saglimbeni v. State,* 100 S.W.3d 429, 435 (Tex.App.–San Antonio 2002, pet. ref'd).

Texas courts have not adopted hard and fast rules for determining whether a witness's mental health history is relevant to a credibility analysis, choosing instead to consider this evidence on an ad hoc basis.

*See Virts v. State,* 739 S.W.2d 25, 28 (Tex. Crim.App.1987). The cases considering this issue suggest that the trial court's decision can be informed by several factors. For example, whether the illness or condition was recent or remote, the manner in which the illness or condition was manifested,[1] and the importance of the witness's testimony to the issues being decided by the jury.[2]

■ Because Texas follows an ad hoc approach, trial courts have broad discretion. *Scott v. State,* 162 S.W.3d 397, 401 (Tex.App.–Beaumont 2005, pet. ref'd). If mental health evidence is admissible for impeachment, the trial court also has considerable discretion to limit the scope of any cross-examination. *See Norrid,* 925 S.W.2d at 347 (the trial court has wide latitude to impose reasonable limits on cross-examination based upon concerns about harassment, prejudice, confusion of the issues, and the witness's safety). But the trial court's discretion is not limitless. The mere fact that the witness has suffered from, or received treatment for, a mental illness or disturbance is insufficient to justify its admission. *Id.* The trial court must have some evidence that the illness is such that "it might tend to reflect upon the witness's credibility." *Id.* (citing *Virts,* 739 S.W.2d at 30). This evidence can take many forms, but it must show that the witness's perception of events was affected[3] or that the witness was otherwise impaired.[4]

### 3. The Record.

■ The record establishes that Ramirez has a disabling mental illness, but there is no support in the record for the proposition that this illness or its treatment affects her memory or perception of events. *Cf. Perry,* 236 S.W.3d at 867 (the witness's experiences of hallucinations or visions were admissible as impeachment evidence); *Goodwin v. State,* 91 S.W.3d 912, 918 (Tex.App.–Fort Worth 2002, no pet.) (no error to exclude evidence that witness was hospitalized in mental health institution because there was no logical nexus connecting this institutionalization with the witness's ability to observe details at the time of the assault); *Lagrone,* 942 S.W.2d at 613 (to pursue impeachment of a witness's perceptual capacity with evidence of drug addiction, counsel must demonstrate actual drug-based impairment during the witness's observation of the crime).

Danny's Service Co. argues that Ramirez's mental health history was admissible because it had the right to impeach a witness with inconsistent statements, that Ramirez provided different versions of how the accident occurred,[5] and that Ramirez's medication helped explain her perception or memory difficulty. The right to impeach with inconsistent statements is

---

1. *Virts,* 739 S.W.2d at 30.

2. *Norrid v. State,* 925 S.W.2d 342, 346 (Tex. App.–Fort Worth 1996, no writ) (no error to prohibit cross-examination about the witness's psychological treatment and medications—in part because she had no knowledge of the offense for which the defendant was charged and offered no testimony regarding the commission of that offense). In criminal cases, the witness's status as an accomplice witness is also a relevant factor. *See, e.g., Perry,* 236 S.W.3d at 867.

3. *See, e.g., Scott,* 162 S.W.3d at 401.

4. *See, e.g., Lagrone v. State,* 942 S.W.2d 602, 613 (Tex.Crim.App.1997).

5. Danny's Service Co.'s brief contains the statement that "Ramirez remembered that Cenci Torres' vehicle was coming toward her, going southbound on FM 2055." The record reference to support this proposition was to counsel's argument during a pretrial hearing.

not questioned. Mikeal did not object to the following cross-examination:

Q. Did you ever tell anybody that you thought that Cenci's car was heading towards you-all at the time of the accident?

A. At the time of the accident, when Cenci's car—I had seen her, and she was on the left-hand side of the road, and that's when she was passing him. So when she was on the left-hand side of the road, I mean, it happened so fast that the back of her vehicle could have been the front of her vehicle, because it was flipping and everything. But I knew that she had got cut off. And remembering it all now, I know that she was passing on the left-hand side.

Q. My question was: Did you tell some people originally that you thought she was heading towards you-all at the time of the accident?

A. That she could have been by—by the looks of her flipping over.

Danny's Service Co. did not offer direct evidence that Ramirez told anyone she thought Cenci's car was coming toward them at the time of the accident; but, even if we characterize this testimony as evidence of a prior inconsistent statement, we do not read *Virts* to hold that one need only raise a credibility challenge to an adverse witness to open the door to their mental health history. Instead, the trial court must have some basis to conclude that a witness's medication or condition has impacted their memory or perception.

We realize that the trial court watched Ramirez's video deposition before making a ruling. The court's commitment is commendable—particularly considering the fact that the court presides over a multi-county district and was confronting winter weather issues during the trial. At Dan-

ny's Service Co.'s suggestion, we too have watched the video. Ramirez was an emotional and distraught witness. This may be due to her condition or medication, but judges are not qualified to make independent determinations on the impact of a particular medication or the effects of a particular disease. Absent some history of memory or perception problems such as delusions or some evidence of the potential side effects of a medication or the disabilities associated with a mental health condition that reflect on a witness's memory or perception, a trial court abuses its discretion by admitting mental health information for impeachment purposes. Because no such evidence is in the record, we find that the trial court abused its discretion.

■ The trial court's error was harmful. Ramirez was the only independent fact witness, and she provided much of the factual basis for plaintiff's liability claim. Ramirez and her boyfriend were driving into Denver City. Cenci's vehicle was in front of them, and Villegas was in front of Cenci. Ramirez testified that Villegas did not use his blinkers and that he gave no indication he was turning before Cenci started to pass. When Villegas started to turn, Cenci took evasive action and lost control of her vehicle. Cenci's vehicle flipped and landed on its roof. Ramirez went to Cenci's vehicle to render aid and heard Cenci say, "He cut me off." This testimony was disputed by Villegas who insisted that he turned on his left turn signal light approximately two truck lengths before the turn.

The jury was required to resolve this conflicting testimony to ascertain liability. Consequently, impeachment evidence was crucial. Because Ramirez was improperly impeached, Issue One is sustained. This holding makes it unnecessary for us to address Mikeal's second issue.

## IV. *Holding*

The judgment of the trial court is reversed, and the case is remanded to the trial court for a new trial.