

# NUMBER 13-11-00522-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

MANDI JAI BALDERAS A/K/A
MANDI JAI ZAPATA,                                                    Appellant,

v.

THE STATE OF TEXAS,                                                    Appellee.

---

### On appeal from the 329th District Court
### of Wharton County, Texas.

---

# MEMORANDUM OPINION

### Before Justices Rodriguez, Benavides, and Perkes
### Memorandum Opinion by Justice Rodriguez

A jury convicted appellant Mandi Jai Balderas a/k/a Mandi Jai Zapata (Balderas) of

intoxication manslaughter with a deadly weapon and assessed punishment at eight years

in the Institutional Division of the Texas Department of Criminal Justice.   *See* TEX. PENAL

CODE ANN. § 49.08 (West 2011). By three issues, Balderas complains that: (1) the evidence was legally insufficient to support the deadly-weapon finding; (2) the trial court erred when it excluded evidence that the other driver was allegedly intoxicated at the time of the accident; and (3) the trial court erred when it admitted testimony of a trooper whose accident-reconstruction training was limited. We affirm.

## I. BACKGROUND

At approximately 8:30 p.m. on November 1, 2009, Balderas was driving a vehicle that collided with one driven by Charles Kenneth Perry Sr. At trial, Don Perry, Charles's uncle, testified that he and Charles were driving vehicles—Charles following Don—heading south on a single-lane highway. Don explained that he saw Balderas's vehicle in the northbound lane. According to Don, when Balderas was approximately fifty feet ahead of him, she swerved out of her lane into the lane of traffic where he and Charles were traveling. Thinking that Balderas was going to hit him, Don at first "eased over a little bit." Balderas kept coming toward him, and he moved further over until he was "completely over on the shoulder." Don testified that he braced himself, seeing that Balderas was not taking "any action to get back on the road." Balderas missed Don "by a matter of inches" and hit Charles who had also pulled his vehicle over on the shoulder. Don testified that when he looked in his rearview mirror, he saw "a big old explosion" as Balderas's car collided with Charles's truck.

Department of Public Safety Trooper Alfred Ochoa Jr., who investigated the crash site, testified that, after the collision, Charles's vehicle flipped multiple times before coming to rest in the southbound shoulder. Trial testimony also established that

2

Balderas's vehicle ended up on the northbound shoulder where it caught fire and burned. With assistance, Balderas escaped from her vehicle. Charles was pronounced dead at the scene.

Paramedic Ben Altenhoff testified that he was concerned about the possibility of alcohol exacerbating the effects of narcotic pain medication when he smelled alcohol on Balderas's breath and asked Balderas if she had drunk any alcohol. Balderas told him that she had. Pat Korenek, a nurse who offered assistance at the accident scene, testified that she smelled alcohol when she was near Balderas. A subsequent chemical analysis of Balderas's blood sample revealed that she had a blood alcohol level of approximately .177.

After the State rested its case and the trial court denied the State's motion for directed verdict, Balderas changed her plea to the intoxication manslaughter portion of the indictment from "not guilty" to "guilty." She continued to plead "not true" to the deadly-weapon portion of the indictment, and the trial court submitted that special issue to the jury. Finding Balderas guilty of the offense of intoxication manslaughter, the jury further found that Balderas "did use or exhibit a deadly weapon during the commission of said offense." The jury assessed punishment at eight years in prison. This appeal followed.

## II. DEADLY-WEAPON FINDING

By her first issue, Balderas contends that the evidence is legally insufficient to support the jury's deadly-weapon finding. She complains that the "only real evidence supporting the jury's finding of the reckless use of the vehicle[, a conclusion necessary to

3

the jury's deadly-weapon finding,] was her intoxication." *See Sierra v. State*, 280 S.W.3d 250, 255 (Tex. Crim. App. 2009) (setting out factors to consider when determining whether the defendant used a motor vehicle recklessly or dangerously during a felony); *Foley v. State*, 327 S.W.3d 907, 916 (Tex. App.—Corpus Christi 2010, no pet.) (same). Balderas argues that there is virtually a complete absence of determinative evidence regarding any other factors set out in *Sierra* and its progeny. *See Sierra*, 280 S.W.3d at 255. Under the facts of this case, we are not persuaded by Balderas's argument.

## A. Standard of Review and Applicable Law

The *Jackson* standard "is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt." *Brooks v. State*, 323 S.W.3d 893, 902-03, 912 (Tex. 2010). Under the *Jackson* standard, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt"—not whether "it believes that the evidence at the trial established guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see Brooks*, 323 S.W.3d at 898-99; *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009).

Sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009); *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). A person commits the offense of intoxication manslaughter if she operates a motor vehicle in a

public place while intoxicated and by reason of that intoxication causes the death of another by accident or mistake. TEX. PENAL CODE ANN. § 49.08(a). Here, the applicable definition of a deadly weapon is "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." *Id.* § 1.07(a)(17)(B) (West 2011).

To determine whether the evidence supports a deadly-weapon finding in cases involving motor vehicles, we conduct a two-part analysis. *Foley*, 327 S.W.3d at 916; *Hilburn v. State*, 312 S.W.3d 169, 177 (Tex. App.—Fort Worth 2010, no pet.) (citing *Sierra*, 280 S.W.3d at 255). We first "evaluate the manner in which the defendant used the motor vehicle during the felony" by determining whether the defendant's driving was reckless or dangerous. *Sierra*, 280 S.W.3d at 255; *Foley*, 327 S.W.3d at 916. We consider several factors in making this reckless-or-dangerous determination: (1) intoxication; (2) speeding; (3) disregarding traffic signs and signals; (4) driving erratically; and (5) failure to control the vehicle. *Sierra*, 280 S.W.3d at 255-56; *Foley*, 327 S.W.3d at 916. We then consider the second part of the *Sierra* test—"whether, during the felony, the motor vehicle was capable of causing death or serious bodily injury." *Sierra*, 280 S.W.3d at 255; *Foley*, 327 S.W.3d at 916 (citing *Cates v. State*, 102 S.W.3d 735, 738 (Tex. Crim. App. 2003); *Drichas v. State*, 219 S.W.3d 471, 476 (Tex. App.—Texarkana 2007, pet. ref'd); *Williams v. State*, 946 S.W.2d 432, 435 (Tex. App.—Fort Worth 1997, pet. dism'd)). Balderas challenges only the evidence to establish the manner of her driving; therefore, we need not address the second part of the *Sierra* test. *See* TEX. R. APP. P. 47.4.

5

**B. Analysis**

Balderas concedes that she was intoxicated. This is one factor we consider. *See Sierra*, 280 S.W.3d at 255. In addition, given Don Perry's testimony that Balderas drove into the oncoming lane of traffic and continued on to the opposite shoulder where she hit Charles's vehicle, the evidence establishes that Balderas drove erratically, disregarded the center stripe, and failed to control her vehicle. *See id.* at 255-56; *Foley*, 327 S.W.3d at 916. Viewing the evidence in the light most favorable to the prosecution and basing our determination on more than one of the *Sierra* factors, we conclude that any rational juror could have found that the evidence was sufficient to determine that Balderas's driving when she hit Charles's vehicle was reckless or dangerous; thus, she operated her vehicle as a deadly weapon. *See Jackson*, 443 U.S. at 318-19; *Brooks*, 323 S.W.3d at 898-99; *Laster*, 275 S.W.3d at 517. The evidence was sufficient to support the jury's deadly-weapon finding. *See* TEX. PENAL CODE ANN. § 1.07(a)(17)(B). We overrule Balderas's first issue.

### III. TRIAL COURT'S EVIDENTIARY RULINGS

By her remaining issues, Balderas challenges the trial court's exclusion of certain evidence and its admission of other evidence.

**A. Standard of Review**

An appellate court may not disturb a trial court's evidentiary rulings absent an abuse of discretion. *Winegarner v. State*, 235 S.W.3d 787, 790 (Tex. Crim. App. 2007). As long as the trial court's decision was within the zone of reasonable disagreement and was correct under any theory of law applicable to the case, it must be upheld. *Id.* (citing

*Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (en banc) (op. on reh'g)).   The exclusion or admission of evidence does not result in reversible error unless it affects a substantial right of the accused.   *See* TEX. R. APP. P. 44.2(a), (b).

## B.   Exclusion of Evidence

By her second issue, Balderas contends that the trial court erred when it excluded evidence that the victim was driving while allegedly intoxicated.   We disagree.

### 1.   Criminal Responsibility Under Section 6.04(a)

Balderas pleaded guilty to involuntary manslaughter.   Therefore, an analysis of causation, as an element of involuntary manslaughter, is not necessary to the final disposition of this appeal.   *See* TEX. R. APP. P. 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal."); *see* TEX. PENAL CODE ANN. § 49.08(a).

Nonetheless, Balderas cites us to section 6.04(a) of the penal code.   *See* TEX. PENAL CODE ANN. § 6.04(a) (West 2011).   Section 6.04(a) provides the following principle of causation required to establish criminal responsibility:   "A person is criminally responsible if the result would not have occurred but for his conduct, operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor clearly insufficient."   *Id.*   In other words, when the conduct of the accused, as well as other potential actions or conditions, could have caused the victim's injury, the accused will nevertheless be held criminally responsible, unless the other causes were clearly sufficient to produce the injury "and the conduct of the [accused was] clearly insufficient."   *Id.*; *see Robbins v.*

7

*State*, 717 S.W.2d 348, 351 (Tex. Crim. App. 1986); *Wooten v. State*, 267 S.W.3d 289, 296 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd); *St. Clair v. State*, 26 S.W.3d 89, 100 (Tex. App.—Waco 2000, pet. ref'd); *see also Beall v. State*, No. 09-98-225CR, 1999 Tex. App. LEXIS 709, at *2 (Tex. App.—Beaumont Feb. 3, 1999, no pet.) (not designated for publication) (reasoning that "because the defense put on no evidence that [the victim] was on the wrong side of the road at the time of the collision," the trial court refused to admit evidence concerning the victim's blood alcohol content).

Balderas contends that evidence of Charles's alleged intoxication was sufficient to show an independent concurrent cause of the accident. However, the record contains the following evidence concerning Charles's actions and the position of Charles's vehicle when it was hit: (1) Charles was on his side of the road, following Don in the southbound lane, at the time of the collision; and (2) Charles was moving onto the shoulder as Balderas drove toward him, suggesting evasive action on his part. We find no evidence in the record supporting Balderas's contention on appeal that the accident could have occurred on her side of the highway. Instead, there is evidence that Balderas crossed the centerline and struck Charles on his shoulder of the road.

The trial court also rejected Balderas's concurrent-cause theory when it explained, "I've not heard any evidence that would raise a question as to whether any of the conduct on the part of Charles Perry could have caused the action." In addition, even were we to conclude that Charles's actions along with Balderas's conduct could have caused his death, we could not conclude that Charles's actions were clearly sufficient to produce the injury and that Balderas's own conduct was clearly insufficient to cause that result. *See*

8

TEX. PENAL CODE ANN. § 6.04(a); *Robbins*, 717 S.W.2d at 351; *St. Clair*, 26 S.W.3d at 100. Therefore, the trial court's determination was within the zone of reasonable disagreement and correct under this theory of law to the extent it applies in this case. *See Winegarner*, 235 S.W.3d at 790.

### 2. Deadly-Weapon Finding

Balderas also contends that the omitted evidence would have been probative in determining whether her use of her vehicle was consistent with the jury's deadly weapon finding. The evidence, which Balderas describes as "evidence that the victim . . . was intoxicated at the time of the accident," however, does not demonstrate that Charles was intoxicated. *See* TEX. PENAL CODE ANN. § 49.01(2) (West 2011) (defining "intoxication" as (1) not having "the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body," or (2) having "an alcohol concentration of .08 or more").

It is undisputed that a toxicology report showed that Charles's blood alcohol level was .02. The report also showed that Charles's blood was positive for THC (Cannabis).[1] Balderas appears to be arguing that the existence of the unknown amount of marihuana with a .02 blood alcohol level, without more, is proof of intoxication. However, Balderas has cited no authority, and we find none, for this proposition. *See Casterline v. State*, 736 S.W.2d 207, 212 (Tex. App.—Corpus Christi 1987, pet. ref'd) (holding that the trial court properly exercised its discretion in refusing to admit "highly speculative" evidence

---

[1] The Texas Health and Safety Code defines "marihuana" as "the plant Cannabis sativa L., whether growing or not, the seeds of that plant, and every compound, manufacture, salt, derivative, mixture, or preparation of that plant or its seeds." TEX. HEALTH & SAFETY CODE ANN. § 481.002(26) (West 2010).

standing alone). And Charles's blood alcohol level was .02., well under the required .08 concentration level for intoxication. *See* TEX. PENAL CODE ANN. § 49.01(2)(B). In addition, as discussed above, there is no evidence that Charles did not have his normal use of mental or physical faculties when the accident occurred. *See id.* § 49.01(2)(A). Rather, there was testimony that Charles did not cross the highway centerline, but stayed in his lane of traffic moving to the shoulder of the highway as Balderas came toward him. In sum, there is neither authority nor support in the record for Balderas's contention, and we again conclude that the trial court's decision to exclude this evidence was within the zone of reasonable disagreement and correct under this applicable theory of law. *See Winegarner*, 235 S.W.3d at 790.

### 3. Rebuttal Evidence at the Punishment Stage

Finally, assuming without deciding that the trial court excluded this evidence as rebuttal evidence to the victim's character evidence at the punishment phase, as Balderas asserts, the trial court did not err in doing so. We do not agree with the logic in Balderas's suggestion that her punishment would have been lessened because of the victim's character and thus, that the evidence should have been admitted at the punishment stage. *See Clark v. State,* 881 S.W.2d 682, 699 (Tex. Crim. App. 1994) (en banc) (excluding victim-character evidence at the punishment stage because the court disagreed with Clark's so-called "logic" in suggesting that the decedent's behavior indicated that she was not a particularly valuable member of the community and that her life might have had more value had she been of a different character). Therefore, as to this contention, we conclude that the trial court action was again within the zone of

10

reasonable disagreement and correct under this theory of law.  *See Winegarner*, 235 S.W.3d at 790.

### 4.  Summary

Based on the above analysis, the court did not abuse its discretion in refusing to admit evidence of Charles's alleged intoxication.   We overrule Balderas's second issue.

## B.  Admission of Evidence

By her third issue, Balderas asserts that the trial court erred when it admitted testimony of Trooper Ochoa because he did not have "training as an accident reconstructionist."   Again, we disagree.

Trooper Ochoa, a Department of Public Safety Trooper for more than five years, investigated the crash site.   He provided testimony regarding how the collision occurred, including the point of collision, evasive action taken by Charles suggested by the skid marks left by Charles's car, and where and why the vehicles ended up where they did after the collision.   Trooper Ochoa testified that he had completed his Level I and Level II accident-reconstruction certification.   Balderas objected that Trooper Ochoa was not qualified to offer accident-reconstruction testimony.   The trial court overruled the objection, but also instructed the jury that while Trooper Ochoa had not been qualified as an accident reconstructionist, "[h]e's been qualified as a collision investigator, Level II. And that I do believe that his opinion as to how the accident probably occurred will be helpful to the jury. . . ."

We first conclude that the trial court did not abuse its discretion in admitting Trooper Ochoa's testimony as a collision investigator:  Trooper Ochoa was a trooper

with five years' experience who had Level II certification, and he investigated this two-vehicle crash site. *See Rodgers v. State*, 205 S.W.3d 525, 527-28 (Tex. Crim App. 2006) ("Because the possible spectrum of education, skill, and training is so wide, a trial court has great discretion in determining whether a witness possesses sufficient qualifications to assist the jury as an expert on a specific topic in a particular case."); *Lopez-Juarez v. Kelly*, 348 S.W.3d 10, 25 (Tex. App.—Texarkana 2011, pet. denied) ("While a police officer with a Level II certification may be qualified to testify as to causation in simple accidents—depending on the facts of the case—the certification of the police officer, by itself, is not determinative."); *see also* TEX. R. EVID. 702 ("If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."). This is so, particularly in light of the trial court's instruction to the jury. *See Kirsch v. State*, 306 S.W.3d 738, 748 (Tex. Crim. App. 2010) ("[W]e must presume that the jury followed the instruction that was actually given.").

Moreover, even were we to conclude that the trial court abused its discretion in admitting Trooper Ochoa's testimony, we would nonetheless conclude that its ruling is not reversible because it did not affect Balderas's substantial rights. *See* TEX. R. APP. P. 44.2(b). In this case, the same or similar evidence was admitted without objection. *See Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998) (en banc) ("[O]verruling an objection to evidence will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling."). Don Perry testified

12

as to what he saw. Without objection, he described Balderas's movement from her lane into the lane in which he and Charles were driving. Don testified that Balderas hit Charles's car immediately after she passed within inches of his car on the shoulder of the lane in which he and Charles were traveling. Furthermore, Trooper David Hill, who had completed all six levels of the accident reconstruction-certifications, testified at trial. Trooper Hill produced a forensic map of the accident scene showing angles and distances as well as skid and gouge marks. This testimony was also admitted without objection. In addition, we assume the jury followed the trial court's jury instruction that Trooper Ochoa had not been qualified an accident-reconstruction expert, but only as a Level II collision investigator. *See Kirsch*, 306 S.W.3d at 748.

In light of the trial court's instruction and concluding that Balderas's substantial rights were not affected because similar evidence was admitted without objection, we overrule Balderas's third issue.

## V. CONCLUSION

We affirm the judgment of the trial court.

NELDA V. RODRIGUEZ
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
28th day of June, 2012.