

## NUMBER 13-09-00473-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

---

ALBERT FOLEY, JR.,                                                                 Appellant,

v.

THE STATE OF TEXAS,                                                                 Appellee.

---

### On appeal from the 329th District Court
### of Wharton County, Texas.

---

## MEMORANDUM OPINION

### Before Justices Yañez, Garza, and Benavides
### Memorandum Opinion by Justice Garza

A jury convicted appellant Albert Foley Jr. of his third driving while intoxicated offense. *See* TEX. PENAL CODE ANN. § 49.04 (Vernon 2003), § 49.09 (Vernon Supp. 2010). The jury also determined that the vehicle Foley was driving at the time of the offense was used as a deadly weapon. *See id.* § 1.07(a)(17) (Vernon Supp. 2010). After finding two enhancement allegations to be true, the trial court sentenced Foley to

twenty-five years' imprisonment in the Institutional Division of the Texas Department of Criminal Justice.   By four issues, Foley asserts that:   (1) there was no probable cause to support the search warrant for blood evidence; (2) he was given ineffective assistance of counsel; (3) the evidence was insufficient to support the driving while intoxicated conviction; and (4) the evidence was insufficient to support the deadly weapon finding.

We modify the trial court's judgment and affirm it as modified.

## I. BACKGROUND

On May 21, 2008, seventy-year-old Foley crashed his pickup truck into an aluminum barrier on the Highway 59 service road in Wharton County, Texas.   Don Mallett, an employee from a nearby agricultural business named Wilbur-Ellis, testified that he was working in his office approximately sixty feet from the road when he heard the crash.   Mallett stated that, from his office window, he saw that Foley's truck had careened off the road into some tall grass after crashing and that the truck's tires were "throwing dirt and rocks" as Foley attempted to get back onto the road.   Mallett called local law enforcement to investigate.

Another Wilbur-Ellis employee, Guy Hill, testified that he was working outside when he saw Foley's pickup truck driving approximately sixty miles per hour towards the aluminum barrier.   Hill was 225 feet away from the crash site.   Hill testified that he believed Foley was intoxicated at the time of the accident because after Foley exited his pickup truck, he could not stand up without hanging onto the door or the side of his truck.

Officer Clint Savino, a patrol officer from the El Campo Police Department, responded to the accident scene.   Officer Savino testified that he found Foley attempting to change a tire on his pickup which had blown out during the crash.   He testified that

2

Foley's eyes were red and glassy, his speech was unintelligible and slurred, his breath smelled strongly of alcohol, and that he was grasping onto the door of the pickup truck to stand up straight while speaking to the officer. Officer Savino also testified that he saw an open sixteen-ounce can of Busch beer in the pickup truck. Later, while conducting an inventory of the vehicle, he found a quarter-full bottle of Boone's Wild Cherry wine, and an unopened sixteen-ounce can of Busch beer. Officer Savino stated that Foley admitted that he had been driving and thought that he was "on the north side of Houston," when he was, in fact, approximately seventy miles south of the city. Foley refused to take a breathalyzer test or provide a blood sample.

While at the accident scene, Officer Savino performed four field sobriety tests on Foley—the horizontal gaze nystagmus test, the walk-and-turn test, alphabet recitation without singing, and the one-leg stand test. Foley failed to complete the first two tests. During trial, Officer Savino admitted that field sobriety tests are not reliable for persons over the age of sixty-five, as advanced age and health issues can factor into whether one passes a field sobriety test. Officer Savino "gave consideration that [Foley was] seventy years old and that he might have arthritis or [a condition] that would hinder his being able to perform the tests." Officer Savino also admitted that he did not ask Foley whether he had sustained any head injuries during the crash.

Officer Savino arrested Foley for driving while intoxicated and transported him to the El Campo Police Department. While there, Officer Savino drafted an affidavit to request a blood search warrant. The affidavit included Officer Savino's observations of Foley's appearance and demeanor during his arrest, and also his observations from the field sobriety tests. Judge Tim Drapela signed the warrant upon review. The blood test

3

revealed that Foley's blood alcohol level was .26, over three times the legal limit.

A jury convicted Foley of his third driving while intoxicated offense and also of using or exhibiting a deadly weapon, specifically, a vehicle. The court sentenced Foley to twenty-five years' incarceration. This appeal followed.

## II. PROBABLE CAUSE FOR SEARCH WARRANT

### A. Standard of Review and Applicable Law

In general, obtaining a blood sample is a search and seizure within the meaning of the Fourth Amendment of the United States Constitution. U.S. CONST. amend. IV; *see Schmerber v. California*, 384 U.S. 757, 767 (1966). Consequently, Article 1, Section 9 of the Texas Constitution requires that a search warrant be used to take blood evidence. TEX. CONST. art. 1, § 9; *State v. Dugas*, 296 S.W.3d 112, 115 (Tex. App.–Houston [14th Dist.] 2009, pet. ref'd). Under Texas law, a search warrant may be issued to obtain "property or items . . . constituting evidence of an offense or constituting evidence tending to show that a particular person committed an offense." TEX. CODE CRIM. PROC. ANN. art. 18.02(10) (Vernon 2005). Blood is an item of evidence within the meaning of article 18.02(10). *Id.*; *see Dugas*, 296 S.W.3d at 115; *Muniz v. State*, 264 S.W.3d 392, 396 (Tex. App.–Houston [1st Dist.] 2008, no pet.).

A magistrate may not issue a search warrant unless he or she receives a sworn affidavit which sets forth sufficient facts to establish probable cause. TEX. CODE CRIM. PROC. ANN. art. 18.01(c) (Vernon Supp. 2010). The sworn affidavit must show: (1) that a specific offense has been committed; (2) the specifically described property or items to be searched for or seized which would constitute evidence of the offense or evidence that a particular person committed that offense; and (3) that the property or items constituting

4

such evidence are located at or on the particular person, place, or thing to be searched. *Id.* Whether the facts mentioned in the affidavit are adequate to establish probable cause depend on the totality of the circumstances. *Ramos v. State*, 934 S.W.2d 358, 362-63 (Tex. Crim. App. 1996). "Probable cause exists when, under the totality of the circumstances, there is a 'fair probability' that contraband or evidence of a crime will be found . . . ." *Rodriguez v. State*, 232 S.W.3d 55, 60 (Tex. Crim. App. 2007). The standard for review in challenging whether probable cause existed for an affidavit is whether the magistrate had a substantial basis for concluding that it existed. *Illinois v. Gates*, 462 U.S. 213, 236 (1983).

**B.      Analysis**

By his first issue, Foley argues that the search warrant was improper because it was not supported by probable cause. Specifically, he contends that the field sobriety tests mentioned in Officer Savino's warrant were not a credible source of information regarding Foley's alleged intoxication due to Foley's age. In support of this argument, Foley cites testimony from Officer Savino wherein he admits that field sobriety tests are not reliable indicators of intoxication for persons over the age of sixty-five.

Assuming, without deciding, that the field tests were inapplicable to Foley, we conclude that the remaining facts in Officer Savino's affidavit were still sufficient to establish probable cause. Officer Savino's affidavit reported that Foley smelled strongly of alcohol, had red and glassy eyes, slurred speech, poor balance, and that he refused to provide a breath or blood sample. The affidavit further showed that Foley was geographically disoriented because he thought that he was on the "north side of Houston," when indeed he was seventy miles south in Wharton County. The affidavit

5

also provided that Foley admitted to driving. Finally, Officer Savino stated in the affidavit that, "I have seen intoxicated persons on many occasions in the past. Based on all of the above and my experience and training, I determined that the suspect was intoxicated.…"

Significantly, we note that during trial, Judge Drapela stated that even without the information from the field tests, he still would have found probable cause because of Foley's "eye glaze" and "the remarks about the odor on [Foley's] breath, remarks about his balance, the fact that he had been involved in a collision, and the fact that he thought he was about [seventy] miles from where he actually was." In light of the foregoing, we hold that the facts stated in Officer Savino's affidavit established probable cause to obtain a blood sample, even if we disregard the field test information in the affidavit. Under the totality of the circumstances, there was sufficient reason to believe that obtaining a blood sample would elicit evidence to prove that Foley committed the offense of driving while intoxicated. *See Rodriguez*, 232 S.W.3d at 60. We overrule this issue.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

### A. Standard of Review and Applicable Law

The United States Supreme Court set forth a two-part test in *Strickland v. Washington* to determine whether a criminal defendant was provided ineffective assistance of counsel. *See Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). The *Strickland* test first requires the appellant to demonstrate that counsel's performance was so deficient that it fell below an objective standard of reasonableness. *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999); *see Strickland*, 466 U.S. at 687. Assuming the appellant has demonstrated deficient assistance, he or she must then show that there is a

6

reasonable probability that the final result would have been different but for counsel's errors. *Thompson*, 9 S.W.3d at 812-13.

The appellant must prove ineffective assistance of counsel by a preponderance of the evidence. *Id.* The appellant must overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance and that counsel's actions could be considered a sound trial strategy. *Jaynes v. State*, 216 S.W.3d 839, 851 (Tex. App.–Corpus Christi 2006, no pet.). A reviewing court should not second-guess legitimate tactical decisions made by trial counsel. *State v. Morales*, 253 S.W.3d 686, 696 (Tex. Crim. App. 2008). In determining whether an attorney's performance was deficient, we apply a strong presumption that the attorney's conduct was within the wide range of reasonable professional assistance. *Thompson*, 9 S.W.3d at 813. We review the effectiveness of counsel in light of the totality of the representation and the circumstances of each case. *Id.* The court of criminal appeals has made clear that, in most cases, a silent record that does not explain counsel's actions will not overcome the strong presumption of reasonable assistance. *See Rylander v. State*, 101 S.W.3d 107, 110-11 (Tex. Crim. App. 2003).

**B.    Analysis**

Foley complains that his trial attorney:   (1) only visited him once in the jail prior to trial; (2) did not conduct a fact investigation; (3) did not prepare a defense; (4) failed to interview or present witnesses during the sentencing hearing; (5) made no effort to learn Foley's social history; and (6) refused to provide a copy of the police report to Foley.

In his defense, Foley's trial counsel filed an "Affidavit of Defense Counsel" after trial.   The affidavit, in relevant part, stated:

7

My name is Richard L. Manske, TBC # 12956500 and I am over the age of eighteen years and competent to make this affidavit. I represented Mr. Foley for pre-trial and trial of the above-captioned cause. I met with my client at least once at the jail and several times in court when he made various appearances. With the assistance of my associate David Kiatta, I prepared and presented what I believe was the best possible defense given the facts of the case. We litigated a contentious motion to suppress and were prepared to cross-examine each and every witness presented at both the guilt and punishment phases. As for additional punishment witnesses, I felt that the judge was inclined to be merciful in this case. I did not believe it wise to give the State the opportunity to cross-examine any defense punishment witnesses and possibly harm my client thereby. The wisdom of that decision is evident in that the judge assessed the minimum lawful sentence given my client's criminal history.

Manske's affidavit addresses Foley's first, second, third, and fourth sub-issues. For example, Manske states that he met with Foley more than once, both in jail and at various court appearances. During these visits, Manske learned information about Foley and the case which helped him prepare and present "the best possible defense given the facts of the case." Manske also had a trial strategy with respect to not presenting witnesses during the sentencing hearing, as he felt the "judge was inclined to be merciful" to Foley and that he did not want to "give the State the opportunity to cross-examine any defense punishment witnesses" which could possibly harm Foley.

Manske provided reasonable explanations of his decisions that appear to be within the wide range of reasonable professional assistance. *Jaynes*, 216 S.W.3d at 851. As a reviewing court, we do not second-guess his decisions as trial counsel. *Morales*, 253 S.W.3d at 696. However, even if we assumed that Manske's actions fell below the objective standard of reasonableness, Foley has not established that a different result would have occurred had Manske acted differently. *See Thompson*, 9 S.W.3d at 812. Thus, we cannot conclude that Manske's actions resulted in any prejudice to Foley. *Id.*

8

at 813.

With respect to Foley's fifth and sixth sub-issues, the record is silent as to whether Manske made an effort to learn Foley's social history[1] or whether he gave Foley a copy of the police record. Accordingly, Foley's complaints regarding these issues are not firmly found in the record. *Id.* "A silent record which provides no explanation for counsel's actions will not overcome the strong presumption of reasonable assistance." *See Rylander*, 101 S.W.3d at 110-11*; Hernandez v. State*, 198 S.W.3d 257, 269 (Tex. App.–San Antonio 2006, pet. ref'd). Thus, we find that Foley has failed to rebut the presumption that Manske made these decisions based on sound professional judgment. *See Rylander*, 101 S.W.3d at 111. We overrule this issue.

## IV. INSUFFICIENCY OF EVIDENCE

### A. Standard of Review

Foley's third and fourth issues challenged the factual sufficiency of the evidence used to convict him of driving while intoxicated and to establish that the vehicle he drove was used as a deadly weapon. Given the Texas Court of Criminal Appeals's recent *Brooks v. State* opinion, however, we now construe Foley's factual sufficiency challenges as challenges to the legal sufficiency of the evidence. *Brooks v. State*, No. PD-0210-09, 2010 Tex. Crim. App. LEXIS 1240, at *26 (Tex. Crim. App. Oct. 6, 2010) (plurality op.). *Brooks* held that there is "no meaningful distinction between the *Jackson v. Virginia* legal-sufficiency standard and the *Clewis* factual-sufficiency standard, and these two standards have become indistinguishable." *Id.* at **25-26; *see Jackson v. Virginia*, 443

---

[1] In fact, we are not clear about Foley's meaning of the phrase "social history."

U.S. 307 (1979). Thus, the *Jackson v. Virginia* standard is "the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt. All other cases to the contrary . . . are overruled." *Brooks*, 2010 Tex. Crim. App. LEXIS 1240, at *57. Accordingly, we will only apply the *Jackson* evidentiary sufficiency standard.

*Jackson* holds that when conducting a legal sufficiency review, a court must ask whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt"—not whether "*it* believes that the evidence at the trial established guilt beyond a reasonable doubt." *Jackson*, 443 U.S. at 318-19. A legal sufficiency analysis requires the court to view all of the evidence in "a light most favorable to the verdict and to determine whether a rational trier of fact could have found all of the essential elements of the crime beyond a reasonable doubt." *Id.*; *see Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). The trier of fact is the sole judge of the facts, the credibility of the witnesses, and the weight given to testimony. TEX. CODE CRIM. PROC. ANN. art. 38.04 (Vernon 1979); *Beckham v. State*, 29 S.W.3d 148, 151 (Tex. App.–Houston [14th Dist.] 2000, pet. ref'd). "Appellate courts are ill-equipped to weigh the evidence; unlike the fact-finder—who can observe facial expressions and hear voice inflections first-hand—an appellate court is limited to the cold record." *Laster*, 275 S.W.3d at 517 (citing *Moreno v. State*, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988)). We resolve any inconsistencies in the evidence in favor of the final judgment and consider whether the factfinder reached a rational decision. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

Sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009); *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); *Adi v. State*, 94 S.W.3d 124, 131 (Tex. App.–Corpus Christi 2002, pet. ref'd). "Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Villarreal*, 286 S.W.3d at 327; *Malik*, 953 S.W.2d at 240. Under a hypothetically correct jury charge, Foley committed the offense of driving while intoxicated if he: (1) was intoxicated (2) while operating a motor vehicle (3) in a public place. TEX. PENAL CODE ANN. § 49.04(a). Foley used his vehicle as a deadly weapon if (1) its use or intended use (2) was capable of causing (3) death or serious bodily injury. *Id.* § 1.07(a)(17)(B).

**B. Analysis**

### 1. Driving While Intoxicated

Foley contends that the evidence was insufficient to sustain a conviction for driving while intoxicated. We disagree. The evidence showed that: (1) Foley's eyes were red and glassy; (2) his speech was slurred; (3) his breath smelled strongly of alcohol; (4) he had to hold on to the door of his pickup truck to stand upright; (4) he admitted that he had been driving; (5) he was geographically disoriented, thinking he was at least seventy miles north of his actual location; (6) there was an open can of beer in his pickup truck; (7) there was an unopened can of beer and a partially full bottle of wine in his pickup; and that (8) Foley's blood had .26 grams of alcohol per 100 milliliters of blood. In his defense,

11

Foley argues that Officer Savino never asked Foley if he suffered a head injury, which could explain his disorientation at the time of his arrest. Further, Foley contends that Officer Savino used field sobriety tests that are not reliable indicators of inebriation in persons older than sixty-five years old, such as Foley. However, viewing all of the evidence in a light favorable to the verdict, we find that the evidence was sufficient for a rational jury to determine that Foley was guilty of driving while intoxicated beyond a reasonable doubt. *See Jackson*, 443 U.S. at 318-19; *Brooks*, 2010 Tex. Crim. App. LEXIS 1240, at **25-26. We overrule this issue.

**2.      Use of Vehicle as a Deadly Weapon**

Foley also argues that the evidence was insufficient to justify a deadly weapon finding.[2] The Texas Penal Code defines a "deadly weapon" as "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." TEX. PENAL CODE ANN. 1.07(a)(17)(B). "To determine whether the evidence supports a deadly weapon finding in cases involving motor vehicles, we conduct a two-part analysis." *Hilburn v. State*, 312 S.W.3d 169, 177 (Tex. App.—Fort Worth 2010, no pet.) (citing *Sierra v. State,* 280 S.W.3d 250, 255 (Tex. Crim. App. 2009)). We first "evaluate the manner in which the defendant used the motor vehicle during the felony." *Sierra*, 280 S.W.3d at 255. We then "consider whether, during the felony, the motor vehicle was capable of causing death or serious bodily injury." *Id.*

---

[2] A deadly weapon finding is not part of a sentence. *Ex parte Huskins*, 176 S.W.3d 818, 820-21 (Tex. Crim. App. 2005); *State v. Ross*, 953 S.W.2d 748, 751 (Tex. Crim. App. 1997). While a deadly weapon finding does affect a defendant's eligibility for probation and parole, it does not alter the range of punishment to which the defendant is subject, or affect the number of years assessed. *Huskins*, 176 S.W.3d at 821; *see* TEX. CODE CRIM. PROC. ANN. art. 42.12, § 3g(a)(2) (Vernon Supp. 2010) (providing that community supervision is not available to a defendant "when it is shown that a deadly weapon as defined in Section 1.07, Penal Code was used or exhibited during the commission of a felony offense . . . .").

12

To evaluate the manner in which the defendant used the motor vehicle, we must determine whether the defendant's driving was reckless or dangerous. *Id.* We consider several factors to determine recklessness or dangerousness, such as: (1) intoxication; (2) speeding; (3) disregarding traffic signs and signals; (4) driving erratically; and (5) failure to control the vehicle. *Id.* at 255-56. The record here shows that Foley was intoxicated. The evidence established that Foley smelled of alcohol, had red and glassy eyes, slurred speech, poor balance, and was geographically disoriented, among other factors. The evidence also shows that Foley failed to control his vehicle, given that he crashed into an aluminum barrier. *See Kuciemba v. State*, 310 S.W.3d 460, 462 (Tex. Crim. App. 2010) (finding that "the inference" that an intoxicated driver caused an accident "is even stronger when the accident is a one-car collision with an inanimate object."). Thus, the evidence is sufficient to support that Foley's driving was reckless or dangerous. *Id.*

We now turn to the second part of the *Sierra* test—whether the motor vehicle could cause death or serious bodily injury. *Sierra*, 280 S.W.3d at 255. To sustain this finding, several Texas courts have held that there must be evidence that others were *actually* endangered in the accident. *See Cates v. State*, 102 S.W.3d 735, 738 (Tex. Crim. App. 2003); *Drichas v. State*, 219 S.W.3d 471, 476 (Tex. App.–Texarkana 2007, no pet.); *Williams v. State*, 946 S.W.2d 432, 435 (Tex. App.–Fort Worth 1997, pet. dism'd). A hypothetical potential for danger is not sufficient. *Cates*, 102 S.W.3d at 758. We must "examine the record for evidence that there were other motorists at the 'same time and place' as the reckless driving occurred." *Drichas*, 219 S.W.3d at 476; *see Williams*, 946 S.W.2d at 436 (holding that a deadly weapon finding must be supported by evidence

13

that "there was someone present who was placed in danger of serious bodily injury or death.").

The record here shows that when Foley wrecked, the closest person to his vehicle was Mallett, who was sixty feet away from the crash, working inside an office building. The next closest person, Hill, was 225 feet away. Although there was testimony that several businesses are located along the Highway 59 service road where Foley wrecked, there was no evidence that other motorists were on or near the road at the time of the accident. In sum, there is no evidence in the record before us that there were other persons or vehicles at the same "time and place" as Foley. *Drichas*, 219 S.W.3d at 476; *Williams*, 946 S.W.2d at 436. No one other than Foley himself "was placed in danger of serious bodily injury or death." *Williams*, 946 S.W.2d at 436.

Accordingly, we find that there was not sufficient evidence to support the "deadly weapon" finding in this case. TEX. PENAL CODE ANN. 1.07(a)(17)(B). Although Foley's driving may have been reckless or dangerous, it could not cause death or serious bodily injury to others because no other persons or vehicles were in the immediate vicinity of Foley's crash. The evidence is not sufficient for a rational jury to determine that Foley's vehicle was operated as a deadly weapon. *See Jackson*, 443 U.S. at 318-19; *Brooks*, 2010 Tex. Crim. App. LEXIS 1240, at **25-26. We sustain this issue.

### III. CONCLUSION

We modify the trial court's judgment to delete the deadly weapon finding, and we affirm the judgment as modified. *See* TEX. R. APP. P. 43.2(b).

DORI CONTRERAS GARZA
Justice

14

Concurring Memorandum Opinion
by Justice Linda Reyna Yañez.
Publish.
TEX. R. APP. P. 47.2(b)
Memorandum Opinion delivered and
filed this the 21st day of December, 2010.