

**NUMBER 13-13-00143-CR**

**COURT OF APPEALS**

**THIRTEENTH DISTRICT OF TEXAS**

**CORPUS CHRISTI – EDINBURG**

**ESIDRO RODRIGUEZ,** **Appellant,**

**v.**

**THE STATE OF TEXAS,** **Appellee.**

**On appeal from the 24th District Court
of Calhoun County, Texas.**

## MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Garza and Perkes
Memorandum Opinion by Chief Justice Valdez**

A jury convicted appellant, Esidro Rodriguez, of evading arrest or detention with

a vehicle, a third-degree felony, and found by special issue that appellant used a deadly

weapon. *See* TEX. PENAL CODE ANN. § 38.04(b)(2)(A) (West Supp. 2011). Appellant

received a sentence of ten years' confinement. By one issue, appellant contends that

the evidence was insufficient to support the jury's finding that the he used the vehicle as a deadly weapon. We affirm.

## I. BACKGROUND[1]

Texas Department of Public Safety Trooper Henry Shultz testified that on the night of April 14, 2012 in Calhoun County, he initiated a traffic stop of appellant's black pickup truck because it had an expired license registration sticker and improper license plate lighting. Appellant stopped his vehicle; however, Trooper Shultz noticed that appellant "was riding his brakes," Trooper Shultz became "concerned." Trooper Shultz testified that he waited for appellant to put his vehicle in park before exiting his own vehicle. However, when Trooper Shultz exited his vehicle, appellant drove off. Trooper Shultz stated that he pursued appellant at speeds "well over 100." According to Trooper Shultz, appellant eventually stopped again, and Trooper Shultz told appellant over his "external P.A. radio" to exit his vehicle. Trooper Shultz stated that as he made the announcement, appellant's truck while in neutral "rolled backwards in the area of [his] unit." Trooper Shultz explained, that due to appellant's vehicle backing up, he "was forced to back up." Trooper Shultz said, "At that time I just felt that things were going south pretty quick so I unlocked my shotgun release to grab my shotgun. It was hung up and as I was fighting the shotgun to come out of the rack, [appellant] spun in a circular motion in the intersection. He fled once more in a circular motion." Trooper Shultz clarified that appellant "[spun the vehicle] around in a circle like a donut." Trooper Shultz continued pursuing appellant. According to Trooper Shultz, appellant

---

[1] Because this is a memorandum opinion and the parties are familiar with the facts, we will not recite them here except as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* TEX. R. APP. P. 47.4.

stopped his vehicle again, positioning it facing Trooper Shultz's car. Trooper Shultz stated that because the situation had become dangerous, he called for backup. Trooper Shultz testified that the following occurred:

> After about 10 seconds of sitting in my car not knowing exactly what was fixing to happen, if I was going to get rammed or ambushed, I felt like a sitting duck in my patrol car, so I opened the door, got out, drew my revolver, my pistol, and at that time I started to raise the gun at the vehicle and I was going to start giving commands at that point since I had a gun out and both hands were ready to act if needed.
>
> . . . .
>
> As soon as I made these motions, the truck, I heard the engine accelerate. I heard the rear tires peeling out as they hit the asphalt and the headlights came straight at me.
>
> . . . .
>
> I shot two rounds through the windshield. At that time I retreated backwards as the truck still came rolling towards me. I retreated back to where my gas cap would be on my patrol car. At that time I fired one more round through the driver's door at the driver.
>
> . . . .
>
> After the third shot was fired the truck came to a rest. I ran into the darkness into the bar ditch and at that time that's when I began giving commands for them to exit.

Appellant and another man exited the vehicle, and Trooper Shultz arrested both men. Trooper Shultz stated that he felt the need to shoot at appellant's vehicle because he "felt in fear for [his] life standing next to [his] patrol car with only a pistol in hand while this large truck was coming at [him]." The State then played a video taken from Trooper Shultz's vehicle's video camera for the jury.

Texas Ranger Drew Edward Pilkington testified that a motor vehicle can be used as a deadly weapon and about his investigation of the incident between Trooper Shultz

3

and appellant. Ranger Pilkington testified that it was his opinion that the first time appellant failed to stop for Trooper Shultz, "the manner that he pulled out [onto the highway] caused the other vehicles to take evasive action and that could have caused [the occupants of] those vehicles if they crashed, you know, death or serious bodily injury." Ranger Pilkington believed that the manner of appellant's use of his vehicle could have also caused serious bodily injury or death to his passenger. When asked if operating a vehicle over 100 miles per hour in a thirty-five mile per hour zone could also cause serious bodily injury or death and if appellant was operating the vehicle in a manner constituting a deadly weapon, Ranger Pilkington replied, "Yes, sir, it could have." Finally, the prosecutor asked, "Now is accelerating towards that trooper, do you have an opinion of whether or not that vehicle was being used in such a way that it could be considered a deadly weapon?" Ranger Pilkington responded, "Yes, sir, it was." Ranger Pilkington believed that Trooper Shultz's use of deadly force by firing his weapon at appellant's vehicle was justified.

## II. STANDARD OF REVIEW AND APPLICABLE LAW

In a sufficiency review, we examine the evidence in the light most favorable to the prosecution to determine whether any rational fact-finder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see Brooks v. State*, 323 S.W.3d 893, 898–99 (Tex. Crim. App. 2010) (plurality op.). The fact-finder is the exclusive judge of the facts, the credibility of witnesses, and of the weight to be given testimony. *Brooks*, 323 S.W.3d at 899. We must resolve any evidentiary inconsistencies in favor of the judgment. *Id.*

4

We measure the sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge. *Coleman v. State*, 131 S.W.3d 303, 314 (Tex. App.—Corpus Christi 2004, pet. ref'd) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). Here, the applicable definition of a deadly weapon is "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." TEX. PENAL CODE ANN. § 1.07(a)(17)(B) (West Supp. 2011).

To determine whether the evidence supports a deadly-weapon finding in cases involving motor vehicles, we conduct a two-part analysis. *Foley v. State*, 327 S.W.3d 907, 916 (Tex. App.—Corpus Christi 2010, no pet.); *Hilburn v. State*, 312 S.W.3d 169, 177 (Tex. App.—Fort Worth 2010, no pet.) (citing *Sierra v. State*, 280 S.W.3d 250, 255 (Tex. Crim. App. 2009) (setting out factors to consider when determining whether the defendant used a motor vehicle recklessly or dangerously during a felony)). We first "evaluate the manner in which the defendant used the motor vehicle during the felony" by determining whether the defendant's driving was reckless or dangerous. *Sierra*, 280 S.W.3d at 255; *Foley*, 327 S.W.3d at 916. We consider several factors in making this reckless-or-dangerous determination: (1) intoxication; (2) speeding; (3) disregarding traffic signs and signals; (4) driving erratically; and (5) failure to control the vehicle. *Sierra*, 280 S.W.3d at 255–56; *Foley*, 327 S.W.3d at 916. We then consider "whether, during the felony, the motor vehicle was capable of causing death or serious bodily injury." *Sierra*, 280 S.W.3d at 255; *Foley*, 327 S.W.3d at 916 (citations omitted).

### III. ANALYSIS

Appellant argues, in pertinent part, the following: (1) the evidence "showed nothing more than that the defendant was trying to evade arrest by speeding off in his

car"; (2) that "Officer Shultz was the one who endangered the defendant's and the passenger's life by acting unprofessionally"; (3) that there "was no evidence presented at trial that defendant's vehicle came close enough to collide with the trooper's car"; and (4) "if defendant really wanted to hurt the trooper, he had plenty of opportunities to do it prior than this occasion."

Appellant does not address which part of the *Sierra* test he is challenging. Nonetheless, we will address both parts of the test. First, we examine whether evidence was presented that appellant's driving was reckless or dangerous. *See Sierra*, 280 S.W.3d at 255. The jury heard evidence that appellant sped, made donuts on the public streets, and entered a highway recklessly causing other motorists to veer out of his way. From this evidence the jury could have found that appellant disregarded traffic rules. Evidence was also presented that appellant (1) traveled at over 100 miles per hour in a thirty-five mile per hour zone, which according to Ranger Pilkington was using the vehicle in a manner that could have caused serious bodily injury or death; (2) allowed his vehicle to slide backward "forcing" Trooper Shultz to move his vehicle back; and (3) drove his vehicle in Trooper Shultz's direction making Trooper Shultz fear for his life. This evidence establishes that appellant drove his vehicle recklessly or dangerously. *See id.*

Next, we examine whether appellant's use of his motor vehicle was capable of causing death or serious bodily injury. *Sierra*, 280 S.W.3d at 255; *Foley*, 327 S.W.3d at 916. Ranger Pilkington testified that on more than one occasion during appellant's commission of evading arrest, appellant used his motor vehicle in a manner that was capable of causing death or serious bodily injury by "pulling" out onto the highway

6

causing other motorists to take evasive action, driving his vehicle in such a manner with a passenger in his vehicle, driving over 100 miles per hour in a thirty-five mile per hour zone, and accelerating his vehicle "towards" Trooper Shultz. Viewing the evidence in the light most favorable to the prosecution, we conclude that any rational juror could have found beyond a reasonable doubt that the evidence was sufficient to determine that appellant drove his vehicle recklessly and dangerously and that he used his vehicle in a manner capable of causing serious injury or death. *See Jackson*, 443 U.S. at 318–19; *Brooks*, 323 S.W.3d at 898–99; *Sierra*, 280 S.W.3d at 255-56; *Foley*, 327 S.W.3d at 916. Thus, the evidence was legally sufficient to support the jury's finding that appellant used his vehicle as a deadly weapon. We overrule appellant's sole issue.

### IV. CONCLUSION

We affirm the trial court's judgment.

_____
ROGELIO VALDEZ
Chief Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
25th day of July, 2013.