# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-14-00802-CR

**Pedro Elizondo Martinez, Jr., Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 26TH JUDICIAL DISTRICT NO. 13-1936-K26, HONORABLE DONNA GAYLE KING, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Pedro Elizondo Martinez, Jr., of the felony offense of driving while intoxicated and assessed punishment at 17 years' imprisonment.[1] The district court rendered judgment on the verdict, which included an affirmative finding that Martinez had used or exhibited a deadly weapon during the commission of the offense. In two issues on appeal, Martinez asserts that the evidence is insufficient to support the jury's deadly-weapon finding and that the district court abused its discretion in admitting evidence regarding an automobile accident that did not involve Martinez. We will modify the district court's judgment to delete the deadly-weapon finding and affirm the judgment as modified.

---

[1] *See* Tex. Penal Code §§ 49.04(a), 49.09(b)(2).

## BACKGROUND

The jury heard evidence that on the night of October 30, 2013, at approximately 9:30 p.m., Martinez was involved in an automobile accident on I-35 in Georgetown. Deputy Rodolfo Pena of the Williamson County Sheriff's Department testified that as he was driving northbound on I-35, he noticed a wrecked truck "blocking the [left] lane and it was facing, most of it, southbound." Pena observed a man standing outside the truck, "made contact with the individual, [and] asked him if he was okay." According to Pena, the man, later identified as Martinez, told Pena that "he was fine" but that he had "hit the wall," i.e., the concrete barrier separating the northbound and southbound lanes on I-35. Pena further testified that Martinez's "speech was a little bit slurred" and that he was "using the truck to lean against it for stability," which led Pena to suspect that Martinez might be intoxicated. When asked to describe the traffic that night, Pena testified, "It was light. The roads were a little bit wet. It had just been raining."

Officers John Cochran and David McDonald of the Georgetown Police Department were subsequently dispatched to the scene of the accident, where, Cochran testified, he observed Martinez's truck "facing southbound oncoming traffic in the fast lane on I-35 just past the Williams bridge." McDonald similarly testified that he observed the vehicle "blocking the left-hand lane of travel" on I-35, which he described as a "very dangerous road." Cochran explained that "there [were] like bumpers laying out on the road" and "several alcohol containers that were on the road." Cochran proceeded to ask Martinez what had happened. According to Cochran, Martinez told him "[t]hat he had hydroplaned out of control and then struck the center divider." Cochran further testified that during his conversation with Martinez, he observed signs that Martinez might be

2

intoxicated, including that he was "leaning on his vehicle to stand," had "red, bloodshot [] and glassy eyes" and had "trouble gaining required information, like finding his wallet that was in his front pocket." Additionally, Cochran testified, Martinez told him that he had "four to six alcoholic beverages prior to [Cochran's] contact with him." Cochran recounted that he then asked Martinez to perform the standardized field sobriety tests, which Martinez refused to do. At that point, Cochran testified, he arrested Martinez for driving while intoxicated. Cochran also testified that there were other cars on the roadway that night, and he answered in the affirmative when the prosecutor asked whether "the way that [Martinez's] vehicle was being operated that evening, losing control of the vehicle, crashing into that wall," made the vehicle "capable of causing a collision with another vehicle." On cross-examination, Cochran acknowledged that he did not observe the accident but that another officer had. This second officer was ultimately identified in court only as "Officer Morris," however, and did not testify at trial.

A video recording of the accident investigation and Martinez's arrest, taken from the patrol-car dash camera of Officers Cochran and McDonald, was also admitted into evidence. On the recording, Martinez can be heard talking to himself in the patrol car, stating that he had been drinking, "hydroplaned," and "went into the wall," because he "couldn't step on the brake." Cochran, on cross-examination, agreed with defense counsel that not stepping on the brake is "the correct thing to do when you've lost traction" on a roadway.

Based on the above evidence, the jury found Martinez guilty of driving while intoxicated and assessed punishment at 17 years' imprisonment as noted above. The district court rendered judgment on the verdict. This appeal followed.

3

**ANALYSIS**

**Deadly-weapon finding**

In addition to finding Martinez guilty of the offense of driving while intoxicated, the jury also found that Martinez had used or exhibited a deadly weapon—his motor vehicle—during the commission of the offense. In his first issue, Martinez argues that the evidence is insufficient to support the jury's deadly-weapon finding.

A "deadly weapon" is defined as "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury."[2] In making the determination of whether the evidence is sufficient to support a deadly-weapon finding, "[a]ppellate courts 'review the record to determine whether, after viewing the evidence in the light most favorable to the [verdict], any rational trier of fact could have found beyond a reasonable doubt that the [vehicle] was used or exhibited as a deadly weapon.'"[3] "In order to sustain a deadly-weapon finding, the evidence must demonstrate that: 1) the object meets the definition of a deadly weapon; 2) the deadly weapon was used or exhibited during the transaction on which the felony conviction was based; and 3) other people were put in actual danger."[4] "'Others' connotes individuals other than the actor himself, and danger to the actor alone does not meet the requisite standard of deadly-weapon use."[5] There must be evidence that the defendant's "use of his motor vehicle placed other people in actual danger of

---

[2] Tex. Penal Code § 1.07(a)(17)(B).

[3] *Brister v. State*, 449 S.W.3d 490, 493 (Tex. Crim. App. 2014) (quoting *Cates v. State*, 102 S.W.3d 735, 738 (Tex. Crim. App. 2003)).

[4] *Id*. at 494 (citing *Drichas v. State*, 175 S.W.3d 795, 797-98 (Tex. Crim. App. 2005)).

[5] *Id*.

4

death or serious bodily injury."[6]  In other words, "[t]o sustain a deadly weapon finding, there must be evidence that others were actually endangered, not 'merely a hypothetical potential for danger if others had been present.'"[7]

For example, in *Drichas v. State*, the Court of Criminal Appeals held that the evidence was sufficient to support a deadly-weapon finding when the State presented evidence that, during a police chase in which other "traffic was present on the road," the defendant had "fail[ed] to yield to oncoming traffic," "cut[] off [a police officer], forcing him to slam on the brakes," "disregarded traffic signs and signals, drove erratically, wove between lanes and within lanes, turned abruptly into a construction zone, knocking down barricades as he did so, and drove on the wrong side on the highway."[8]  Similarly, in *Sierra v. State*, the Court of Criminal Appeals held that the evidence was sufficient to support a deadly-weapon finding when the State presented evidence that the defendant's vehicle, while exceeding the posted speed limit, collided with another vehicle, causing serious injury to the other driver.[9]  And this Court, in *Mann v. State*, concluded that the evidence was sufficient to support a deadly-weapon finding when the State presented evidence that the defendant "almost hit another vehicle head-on" and that the only reason a collision did not occur is because the other driver "took evasive action."[10]

---

[6]  *Id*.

[7]  *Cates*, 102 S.W.3d at 738.

[8]  175 S.W.3d at 797.

[9]  280 S.W.3d 250, 256 (Tex. Crim. App. 2009).

[10]  13 S.W.3d 89, 92 (Tex. App.—Austin 2000), *aff'd*, 58 S.W.3d 132 (Tex. Crim. App. 2001).

5

On the other hand, in *Cates v. State*, the Court of Criminal Appeals held that the evidence was insufficient to support a deadly-weapon finding when there was no evidence tending to show that "anyone was actually endangered" by the defendant's vehicle, and a witness testified "that there was no other traffic on the road at the time."[11] And more recently, in *Brister v. State*, the Court of Criminal Appeals held that the evidence was insufficient to support a deadly-weapon finding when the evidence showed that the defendant's vehicle "briefly crossed the center line into the oncoming lane of traffic at a time at which there were very few, if any, cars in that lane," and there was "no testimony that appellant caused another vehicle or person to be in actual danger."[12]

In this case, although the record supports a finding that others *potentially* could have been endangered by Martinez's driving (based, for example, on the evidence regarding the extent of damage to Martinez's vehicle, the manner in which the accident had occurred, and the location of the accident on I-35), there was no evidence presented from which the jury could find that the danger to others was more than "merely hypothetical." All three of the State's witnesses arrived at the scene of the accident after it had already occurred and thus did not witness Martinez's driving. Consequently, none of them observed the traffic conditions that existed at the time of the offense, and none of their testimony supports a finding that Martinez's driving put others in "actual danger." Deputy Pena, although testifying that traffic was "light" on the night in question, provided no testimony indicating the amount of traffic, if any, that existed at the time Martinez was driving. Officer Cochran, although testifying that there were other cars on the road on the night in question

---

[11] 102 S.W.3d at 738.

[12] 449 S.W.3d at 495.

6

and that Martinez's vehicle was "capable" of causing a collision with another vehicle, provided no testimony permitting a reasonable inference as to whether any other vehicles had actually been in danger of colliding with Martinez's vehicle at the time of the offense. And Officer McDonald, although testifying that I-35 was a "very dangerous road," provided no testimony permitting a reasonable inference as to whether others had actually been endangered on that road at the time Martinez committed the offense. Similarly, the video recording that was admitted into evidence shows traffic on I-35 only after the accident had occurred and officers had arrived on the scene. The recording, which shows oncoming traffic on the road at some times but no traffic on the road at other times, does not support a finding that other vehicles were in the vicinity of Martinez's vehicle at the time Martinez was driving. Thus, on this record, the jury could only speculate as to whether others were "actually endangered" at the time Martinez committed the offense.[13] Viewed in the light most favorable to the verdict, the above evidence demonstrates, at most, a "hypothetical

---

[13] The State asserts that the responding officers were in actual danger from other traffic when they were investigating the accident and in the vicinity of Martinez's parked vehicle, which was blocking the left lane of traffic on I-35. However, the relevant inquiry is whether Martinez's motor vehicle itself was capable of causing death or serious bodily injury at the time of the offense. Because a motor vehicle is not a deadly weapon per se, it can be a deadly weapon only if it is capable of causing death or serious bodily injury "in the manner of its use or intended use." *See* Tex. Penal Code § 1.07(a)(17)(B). As the Court of Criminal Appeals has explained, the relevant time period for determining whether a motor vehicle is used or intended to be used in such a manner is the time period during which the offense is committed, not before or after the commission of the offense. *See Cates*, 102 S.W.3d at 738-39. When the officers responded to the accident, Martinez was standing outside the truck and was no longer operating it. Thus, the offense had already been committed by the time the officers arrived at the scene. There is no evidence in this record from which the jury could have reasonably inferred that the responding officers or others were in actual danger during Martinez's commission of the offense.

7

potential for danger if others had been present." But that is not sufficient to support a deadly-weapon finding.[14]

> We sustain Martinez's first issue.

## Evidence admissibility

After Officer McDonald testified that I-35 was a "very dangerous road," the State asked him the following: "And you say I-35 is dangerous or at least this area is dangerous. Do you have any experience with why it would be considered dangerous?" Martinez objected, arguing that "we need to talk about this case, not what has happened in any other case. That's not relevant and the danger of undue prejudice is too great to go into other cases that may have happened." The district court overruled the objection, and McDonald testified as follows:

> I believe it was in 2012. We worked an accident on I-35 about a mile up from where this accident occurred. A deputy constable was working an overtime gig providing traffic control for a construction site, and he was hit in the rear as he was parked with his emergency lights activated by what was determined to be an intoxicated driver and he was seriously injured and sent to the hospital.

No further testimony was elicited concerning this incident. In his second issue, Martinez asserts that the district court abused its discretion in admitting this evidence because, in his view, it was not relevant to the facts of his case or, in the alternative, was more prejudicial than probative.

---

[14] *See, e.g.*, *Brister*, 449 S.W.3d at 495; *Cates*, 102 S.W.3d at 738-39; *Foley v. State*, 327 S.W.3d 907, 917 (Tex. App.—Corpus Christi 2010, pet. ref'd); *Williams v. State*, 946 S.W.2d 432, 435-36 (Tex. App.—Fort Worth 1997), *rev'd on other grounds*, 970 S.W.2d 566 (Tex. Crim. App. 1998)).

Assuming without deciding that the evidence was inadmissible, the erroneous admission of evidence constitutes non-constitutional error and "must be disregarded" unless the error affected the defendant's "substantial rights."[15] "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict."[16] "[S]ubstantial rights are not affected by the erroneous admission of evidence 'if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect.'"[17] "In assessing the likelihood that the jury's decision was adversely affected by the error, the appellate court should consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case."[18] We may also consider the jury instructions, the State's theory and any defensive theories, closing arguments, voir dire, whether the State emphasized the error, and whether there was "overwhelming evidence of guilt."[19]

---

[15] *See* Tex. R. App. P. 44.2(b); *Barshaw v. State*, 342 S.W.3d 91, 93 (Tex. Crim. App. 2011); *Tienda v. State*, 479 S.W.3d 863, 880 (Tex. App.—Eastland 2015, no pet.).

[16] *Schmutz v. State*, 440 S.W.3d 29, 39 (Tex. Crim. App. 2014) (citing *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002)); *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing *Kotteakos v. U.S.*, 328 U.S. 750, 776 (1946)).

[17] *Motilla*, 78 S.W.3d at 355 (quoting *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001); *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998)).

[18] *Id*. (citing *Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000)).

[19] *Id*. at 355-57.

Here, Martinez asserts that the admission of the evidence "may have influenced both the affirmative deadly weapon finding and the finding of guilt itself." Regarding the jury's deadly-weapon finding, we have already concluded that the evidence was insufficient to support that finding and will delete it from the judgment. Accordingly, any impact on that finding from the challenged testimony has been rendered moot.[20] As for the jury's finding of guilt, the record reflects that this was not, as Martinez claims, a "close" case. There was evidence presented that Martinez had admitted to the responding officers that he had been driving the motor vehicle that was involved in the collision and that he had consumed "four to six beers" prior to the accident. The video recording of Martinez's arrest also shows him admitting that he had been drinking and driving and provides visual and auditory evidence from which a jury could reasonably infer that Martinez was intoxicated. Additionally, the officers testified to observing multiple indicators that Martinez was intoxicated, including that Martinez had used his truck to "steady himself" and that he had slurred speech and smelled of alcohol. Moreover, the challenged testimony was limited to a single answer to a single question, and the record reflects that the State did not emphasize this evidence or refer to it in its closing argument, instead emphasizing the evidence summarized above tending to show that Martinez was intoxicated. After reviewing the entire record, we have "fair assurance that the error, if any, did not influence the jury or had but a slight effect."[21]

We overrule Martinez's second issue.

---

[20] *See Herrin v. State*, 125 S.W.3d 436, 445 n.12 (Tex. Crim. App. 2002); *see also Babb v. State*, No. 09-08-00258-CR, 2009 Tex. App. LEXIS 9079, at *20 (Tex. App.—Beaumont Nov. 25, 2009, no pet.) (mem. op., not designated for publication).

[21] *See Motilla*, 78 S.W.3d at 355.

**CONCLUSION**

When the evidence is insufficient to support a deadly-weapon finding, the appropriate remedy is to delete the deadly-weapon finding.[22]  Accordingly, we modify the judgment to delete the deadly-weapon finding.  As modified, the judgment of conviction is affirmed.

_____

Bob Pemberton, Justice

Before Chief Justice Rose, Justices Pemberton and Bourland

Modified and, as Modified, Affirmed

Filed:  October 5, 2016

Do Not Publish

---

[22] *See Williams*, 970 S.W.2d at 566.