

NUMBER 13-18-00591-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

ZHUYRA CUMBALA A/K/A
ROSALISA STEVEN CARRILO,                                    Appellant,

v.

THE STATE OF TEXAS,                                        Appellee.

### On appeal from the 413th District Court
### of Johnson County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Benavides and Longoria**
**Memorandum Opinion by Chief Justice Contreras**

A Johnson County jury found appellant, Zhuyra Cumbala a/k/a Rosalina Steven

Carrilo, guilty of evading arrest or detention in a vehicle, a third-degree felony, *see* TEX.

PENAL CODE ANN. § 38.04(b)(2)(A), and it assessed punishment at seven years'

imprisonment. The jury also found that appellant used a deadly weapon in the

commission of the offense. By one issue, appellant argues that the evidence adduced at trial was insufficient to support the deadly weapon finding. We affirm.[1]

## I. BACKGROUND

Trooper Stephen Bridier of the Texas Department of Public Safety was the only witness to testify at appellant's trial. Bridier stated that, at around 2:00 p.m. on January 17, 2018, he was patrolling westbound U.S. Highway 67 between Cleburne and Glen Rose when he observed a black Dodge sedan travelling eighty miles per hour in a sixty-five miles-per-hour zone. He activated his lights and attempted to initiate a traffic stop, but the driver did not stop. Instead, the Dodge continued travelling along Highway 67 at around sixty-five miles per hour. The moderate-speed chase continued for more than thirteen miles.

Bridier called for assistance, and Somerville County sheriff's deputies set up spike strips on the westbound lanes in order to stop the vehicle. However, the Dodge was able to avoid the spikes, turn around in the highway's grassy median, and proceed eastbound. Bridier testified that appellant then increased her speed to up to 100 miles per hour. The pursuit moved back into Johnson County, where deputies set up another spike strip. This time, the Dodge was not able to avoid the spikes; all four tires were punctured and the vehicle eventually slowed to a stop. Bridier and other officers were able to persuade the driver to exit the car and get on the ground. Appellant was identified as the driver. A video recording from Bridier's patrol unit, showing the chase and its aftermath, was entered into evidence and parts were played for the jury.

The jury found appellant guilty of evading arrest or detention in a vehicle. It also

---

[1] This appeal was transferred to this Court from the Tenth Court of Appeals in Waco pursuant to an order issued by the Texas Supreme Court. *See* TEX. GOV'T CODE ANN. § 73.001.

2

found in a special issue that appellant used or exhibited a deadly weapon—the vehicle—during the commission of the offense. *See* TEX. CODE CRIM. PROC. ANN. art. 42A.054(b) (stating that a defendant is not eligible for judge-ordered community supervision if the defendant used or exhibited a deadly weapon during the commission of a felony offense); TEX. GOV'T CODE ANN. § 508.145 (restricting an inmate's eligibility for parole if the inmate is serving a sentence for an offense for which the judgment contains an affirmative deadly weapon finding). The trial court rendered judgment in accordance with the jury's findings. *See* TEX. CODE CRIM. PROC. ANN. art. 42A.054(c) ("On an affirmative finding regarding the use or exhibition of a deadly weapon as described by Subsection (b), the trial court shall enter the finding in the judgment of the court."). This appeal followed.

## II. DISCUSSION

In reviewing the sufficiency of the evidence in a criminal case, we consider the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have made the challenged finding beyond a reasonable doubt. *Griffin v. State*, 491 S.W.3d 771, 774 (Tex. Crim. App. 2016); *see Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). We resolve any evidentiary inconsistencies in favor of the finding, keeping in mind that the jury is the exclusive judge of the facts, the credibility of the witnesses, and the weight to give their testimony. *Brooks*, 323 S.W.3d at 899; *see* TEX. CODE CRIM. PROC. ANN. art. 38.04.

The Texas Penal Code defines "deadly weapon" as: (A) a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or (B) anything that in the manner of its use or intended use is capable of causing death or serious bodily injury. TEX. PENAL CODE ANN. § 1.07(a)(17).

3

To determine whether the evidence supports a deadly weapon finding in cases involving motor vehicles, we conduct a two-part analysis. *Sierra v. State*, 280 S.W.3d 250, 255 (Tex. Crim. App. 2009); *Foley v. State*, 327 S.W.3d 907, 916 (Tex. App.—Corpus Christi–Edinburg 2010, pet. ref'd). "[F]irst, we evaluate the manner in which the defendant used the motor vehicle during the felony; and second, we consider whether, during the felony, the motor vehicle was capable of causing death or serious bodily injury." *Sierra*, 280 S.W.3d at 255. To evaluate the manner in which the defendant used the motor vehicle, we consider whether the defendant's driving was reckless or dangerous, taking into account several factors such as: (1) intoxication; (2) speeding; (3) disregarding traffic signs and signals; (4) driving erratically; and (5) failure to control the vehicle. *Id.* at 255–56; *Foley*, 327 S.W.3d at 916.

As to whether the vehicle was capable of causing death or serious injury, we consider whether others were actually endangered. *Foley*, 327 S.W.3d at 916 (citing *Cates v. State*, 102 S.W.3d 735, 738 (Tex. Crim. App. 2003); *Drichas v. State*, 219 S.W.3d 471, 476 (Tex. App.—Texarkana 2007, no pet.); *Williams v. State*, 946 S.W.2d 432, 435 (Tex. App.—Fort Worth 1997, pet. dism'd)). A hypothetical potential for danger is not sufficient. *Id.* (citing *Cates*, 102 S.W.3d at 738). We "examine the record for evidence that there were other motorists at the same time and place as the reckless driving occurred." *Id.* at 916–17 (citing *Drichas*, 219 S.W.3d at 476; *Williams*, 946 S.W.2d at 436 (holding that a deadly weapon finding must be supported by evidence that "there was someone present who was placed in danger of serious bodily injury or death")).

Bridier gave the following relevant testimony at trial:

Q. [Defense counsel]    At the time that you're pursuing the vehicle westbound, did you ever think that there was danger to anyone on the road?

4

| A. [Bridier] | Not at that time. I was more concerned about danger to me, what the driver of this vehicle was thinking. I don't know what—if she'd just robbed a place or was trying to get away from somebody else or she may have been at gunpoint, somebody could have been in the floorboard. I don't know. |
|---|---|
| Q. | Okay. And did you ever think on the way back eastbound that there was danger to anyone else on the road? |
| A. | Absolutely. In fact, going westbound where it splits, she almost went—she went off the double yellow line almost in to oncoming traffic coming eastbound. That was scary, for me anyways, so I radioed it at the time. It's not something you want to see, a head-on collision. |

The video evidence corroborates Bridier's testimony. It shows that, when appellant was travelling westbound, there was light traffic and appellant kept her speed at or near the posted limit. However, after appellant turned around in the median and began to drive eastbound, appellant increased her speed.

Appellant argues that she "did not have a near-head-on collision" and "[n]o vehicles had to take evasive action to avoid crashing" into her vehicle. Appellant notes that "many of the vehicles that were still on Highway 67 during the time of the pursuit, both in the eastbound and westbound lanes, had already pulled off to the shoulder of the road before Appellant's vehicle approached them, likely due to the emergency lights and sirens coming from the law enforcement vehicles engaged in the pursuit." She contends that "any alleged danger to others was purely hypothetical" because she was "very much in control of her vehicle, even at higher speeds and after running over the deployed spike strips."

We disagree. According to the video evidence and Bridier's testimony, appellant

5

drove eastbound for seventeen miles at speeds approaching 100 miles per hour, and for most of this time, the road was an undivided two-lane highway with traffic moving in both directions. The video recording shows that, during the eastbound portion of the pursuit, appellant crossed a double yellow center line on three occasions to pass other vehicles, and on each occasion, there were vehicles travelling in the opposite direction that had to maneuver in order to avoid appellant. *See* TEX. TRANSP. CODE ANN. § 545.055(b) ("An operator may not drive on the left side of the roadway in a no-passing zone or on the left side of any pavement striping designed to mark a no-passing zone."); *Sierra*, 280 S.W.3d at 255 (noting that we consider whether the driver disregarded traffic signs and signals).

Though there was no evidence appellant was intoxicated, there can be no doubt that her vehicle was in fact capable of causing death or serious injury to any of the many motorists travelling in the opposite direction during the pursuit, nor can there be any doubt that those motorists were actually endangered. *See* TEX. PENAL CODE ANN. § 1.07(a)(17); *Sierra*, 280 S.W.3d at 255; *Foley*, 327 S.W.3d at 916. We conclude the evidence was sufficient to support the deadly weapon finding.

Appellant's sole issue on appeal is overruled.

### III. CONCLUSION

We affirm the trial court's judgment.

DORI CONTRERAS
Chief Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
15th day of August, 2019.

6